UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


SCHOLLE CUSTOM PACKAGING, INC.,
          Plaintiff,

                                        No. 1:03-cv-93

-v-
                                        HONORABLE PAUL L. MALONEY

GRAYLING INDUSTRIES, INC.,
          Defendant.


OPINION AND ORDER REGARDING CLAIM CONSTRUCTION

     Plaintiff Scholle Custom Packaging, Inc. owns Patent No. 4,781,472 ("Patent No. '472").[1]

The patented invention is a shipping and storage container consisting of an outer bag and inner liner.

The liner is connected to the bag at a series of discrete locations so that when the contents of the

liner are emptied, the liner collapses, independent of the outer bag.  The bag and the liner are made

of flexible material and, when empty, can be folded flat.  Plaintiff Scholle Custom Packaging

(Plaintiff or Scholle) filed suit against Defendant Grayling Industries (Defendant or Grayling) in

1993.  The complaint alleges Defendant manufactures and sells liners that infringe Plaintiff's rights

in Patent No. '472.  On March 22, 2010, the court heard oral argument regarding the construction

of claims, a *Markman* hearing.  After oral argument, Plaintiff filed post-hearing brief and Defendant

filed a response brief.

CONTROLLING AUTHORITY

     The Federal Circuit Court of Appeals has exclusive jurisdiction over appeals from the final

---

[1]Patent No. '472 issued on November 1, 1988.  (Def. Ex. A.)  An *ex parte* reexamination
certificate amending the patent was issued on August 7, 2007.  (Def. Ex. B.)  Citations to the
November 1, 1998 patent will refer to "Patent '472" while citations to the August 7, 2007
amendment will refer to "Amended Patent '472."

decision of a district court, if the district court's jurisdiction was based in part on an act of Congress relating to patents. 28 U.S.C. § 1295(a); *Apotex, Inc. v. Thompson*, 347 F.3d 1335, 1342 (Fed. Cir. 2003). Accordingly, the Federal Circuit's rulings on substantive patent law are controlling authority on this court. *See Eli Lilly and Co. v. Zenith Goldline Pharm., Inc.*, 364 F.Supp.2d 820, 896 (S.D. Ind. 2005) ("Any appeal in this action, which arises under the patent laws of the United States, must be to the United States Court of Appeals for the Federal Circuit, 28 U.S.C. § 1295(a), whose precedent governs matters of substantive patent law in this court."); *GTE Wireless, Inc. v. Qualcomm, Inc.*, 192 F.R.D. 284, 286 n. 1 (S.D.Cal. 2000) ("The Federal Circuit has exclusive appellate jurisdiction on claims arising from patent law and therefore its authority is binding on this Court."); *see also Panduit Corp. v. All States Plastic Mfg. Co., Inc.*, 744 F.2d 1564, 1574-75 and n. 14 (Fed. Cir. 1984) (per curiam) (noting that procedural matters pertaining to patent issues, as opposed to procedural matters in patent cases that do not pertain to the patent issue, must conform to Federal Circuit law) *overruled on other grounds by Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424 (1984).

LEGAL FRAMEWORK

Patent infringement analysis involves two steps. In the first step, the meaning and scope of the patent claims are determined. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc) *aff'd*, 517 U.S. 370 (1996). In the second step, the construed claims are applied to the allegedly infringing device. *Id.*; *see Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1476 (Fed. Cir. 1998) ("Since a full and complete understanding of the scope of the claims is requisite to determining whether the patent is infringed, technical terms or words of art or special usages in the claims, if in dispute, are construed or clarified by the court before the construed claims

2

are applied to the accused device.").

This hearing concerns only the first step of an infringement analysis. The first step, commonly called "claim construction," is a matter of law reserved exclusively for the court. *Markman*, 52 F.3d at 976-79. The purpose or role of claim construction is "neither to limit nor to broaden the claims, but to define, as a matter of law, the invention that has been patented." *Netword, LLC v. Centraal Corp.*, 242 F.3d 1347, 1352 (Fed. Cir. 2001). "It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys, Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). The Federal Circuit Court of Appeals has explained that an appropriate analogy for claim construction is statutory interpretation. *Markman*, 52 F.3d at 987 (explaining that both involve questions of law, both involve an analysis of words on a written document, both begin with a focus on the language in the document with the interpretation of the language governed by axioms and canons of construction, and in both there is only one correct interpretation).

When determining the proper construction of a claim, a court may consult both intrinsic and extrinsic sources. Intrinsic sources consist of the patent, including both the specification[2] and the claims, and, if in evidence, the prosecution history. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996); *see Netword*, 242 F.3d at 1352; *Markman*, 52 F.3d at 979 (quoting *Unique Concepts, Inc. v. Brown*, 939 F.2d 1558, 1561 (Fed. Cir. 1991)). "It is well settled that . . .

---

[2]The "specification" is the portion of the patent that comes before the claims. The specification typically describes the invention and may include the manner and process of making and using the invention. The specification may include one or more embodiments of the invention.

the court should look first to the intrinsic evidence of record, . . . Such intrinsic evidence is the most significant source of the legally operative meaning of disputed claim language." *Vitronics Corp.*, 90 F.3d at 1582 (internal citation omitted). "The claims, specification, and the file history, rather than extrinsic evidence, constitute the public record of the patentee's claim, a record on which the public is entitled to rely. In other words, competitors are entitled to review the public record, apply the established rules of claim construction, ascertain the scope of the patentee's claimed invention and, thus, design around the claimed invention." *Id.* at 1583. "Extrinsic evidence is that evidence which is external to the patent and the file history, such as expert testimony, inventor testimony, dictionaries, and technical treatises and articles." *Id.* at 1584; *see Metabolite Labs., Inc. v. Lab. Corp. of America Holdings*, 370 F.3d 1354, 1360-61 (Fed. Cir. 2004). When intrinsic evidence unambiguously describes the scope of the patented invention, it would be improper for a court to rely on extrinsic evidence. *Vitronics Corp.*, 90 F.3d at 1583; *see Pall Corp. v. Micron Separation, Inc.*, 66 F.3d 1211, 1216 (Fed. Cir. 1995) ("Extrinsic evidence may also be considered, if needed to assist in determining the meaning or scope of technical terms in the claims.").

When engaged in the construction of claims, courts begin by looking to the words of the claims themselves to define the scope of the patented invention. *Vitronics Corp.*, 90 F.3d at 1582; *Innova/Pure*, 381 F.3d at 1116 ("[A] claim construction analysis must begin and remain centered on the claim language itself, for that is the language the patentee has chosen 'to particularly point[ ] out and distinctly claim[ ] the subject matter which the patentee regards as his invention.'" (quoting *Interactive Gift Express, Inc. v. Compuserve, Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001) (quoting 35 U.S.C. § 112))) (alterations added in *Interactive Gift*); *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1305 (Fed. Cir. 1999) ("The starting point for any claim construction must be

the claims themselves."). "The touchstone for discerning the usage of claim language is the understanding of those terms among artisans of ordinary skill in the relevant art at the time of the invention." *Metabolite*, 370 F.3d at 1360; *see Phillips*, 415 F.3d at 1313 ("We have made clear, moreover, that the ordinary and customary meaning of a claim term is the meaning that the term would have had to be a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application."). Such inquiry provides "an objective baseline from which to begin claim interpretation." *Id.*; *see Innova/Pure*, 381 F.3d at 1116 ("The inquiry into the meaning that claim terms would have to be a person of skill in the art at the time of the invention is an objective one."); *Markman*, 52 F.3d at 986 ("[T]he focus is on the objective test of what one of ordinary skill in the art at the time of the invention would have understood the term to mean.").

After reviewing the language of the claims, the second step in claim construction is to review the patent specification. Claims must always be read in view of the specification, which is "highly relevant to the claim construction analysis. Usually it is dispositive; it is the single best guide to the meaning of a disputed item." *Vitronics Corp.*, 90 F.3d at 1582; *see Phillips*, 415 F.3d at 1315-16 (collecting cases which have "long emphasized the importance of the specification in claim construction."). When reviewing the specification, the court should "determine whether the inventor has used any terms in a manner inconsistent with their ordinary meaning." *Vitronics Corp.*, 90 F.3d at 1582 (alteration added); *see Phillips*, 415 F.3d at 1316 ("[T]he specification may reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess. In such cases, the inventor's lexicography governs."); *Interactive Gift*, 256 F.3d at 1331 ("If the claim language is clear on its face, then our consideration of the rest of the intrinsic evidence

is restricted to determining if a deviation from the clear language of the claims is specified."). "[T]he specification may reveal an intentional disclaimer, a disavowal, of claim scope by the inventor. In that instance as well, the inventor has dictated the correct claim scope, and the inventor's intention, as expressed in the specification, is regarded as dispositive." *Phillips*, 415 F.3d at 1316. "Such special meaning, however, must be sufficiently clear in the specification that any departure from common usage would be so understood by a person of experience in the field of the invention." *Multiform Desiccants*, 133 F.3d at 1477.

When reviewing the specification, the court must keep in mind two axioms: (1) the claim must be construed with a view of the specification and (2) the court may not read a limitation into a claim from the specification. *Innova/Pure*, 381 F.3d at 1117; *see Playtex Prods, Inc. v. Proctor & Gamble Co.*, 400 F.3d 901, 906 (Fed. Cir. 2005) (noting both axioms). The Federal Circuit has recognized that the two axioms create a "fine line" between an acceptable claim construction and an unacceptable one. *See Comark Communications, Inc. v. Harris Corp.*, 156 F.3d 1182, 1186 (Fed. Cir. 1998). The problem becomes particularly acute when "the written description of the invention is narrow, but the claim language is sufficiently broad that it can be read to encompass features not described in the written description, either by general characterization or by example in any of the illustrative embodiments." *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 905 (Fed. Cir. 2004). In these situations, the court should remember to look "'to the specification to ascertain the meaning of the claim term as it is used by the inventor in the context of the entirety of his invention,' and not merely to limit a claim term." *Interactive Gift*, 256 F.3d at 1332 (quoting *Comark Communications*, 156 F.3d at 1187). The Federal Circuit cautioned that "particular embodiments and examples appearing in the specification will not generally be read into the claims."

*Comark Communications*, 156 F.3d at 1187 (quoting *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988)).  Furthermore, when the specification contains only a single embodiment, the claim should "not be read restrictively unless the patentee has demonstrated a clear intent to limit the claim scope using words or expressions of manifest exclusion or restriction." *Innova/Pure*, 381 F.3d at 1117 (internal quotation and citation omitted); *see ACTV, Inc. v. Walt Disney Co.*, 346 F.3d 1082, 1091 (Fed. Cir. 2003) ("Where the written description does not expressly limit the claim term and otherwise supports a broader interpretation, we are constrained to follow the language of the claims and give the claim term its full breadth of ordinary meaning as understood by persons skilled in the art.")  (internal quotation and citation omitted).  Conversely, when the specification makes clear that the description of a particular embodiment is an essential characterization of the invention, the claim will not encompass a broader subject.  *See Anderson Corp. v. Fiber Composites, LLC*, 474 F.3d 1361, 1367 (Fed. Cir. 2007).  Along the same lines, when the specification "makes clear that the invention does not include a particular feature, that feature is deemed outside the reach of the claims of the patent, even though the language of the claims, read without reference to the specification, might be considered broad enough to encompass the feature in question."  *Scimed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1341 (Fed. Cir. 2001).

Finally, the third source of intrinsic evidence a court may consider is the prosecution history of the patent.  The prosecution history, if in evidence, contains the complete report of the proceedings before the Patent and Trademark Office (PTO), including representations by the patentee regarding the scope of the claims.  *Vitronics Corp.*, 90 F.3d at 1583.  The prosecution history may include prior art cited by the examination of the patent.  *Phillips*, 415 F.3d at 1317.

Although the prosecution history is "often of critical significance in determining the meaning of the claims," (*Vitronics Corp.*, 90 F.3d at 1582), because it represents an "ongoing negotiation between the PTO and the applicant, rather than the final product of the negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes" (*Phillips*, 415 F.3d at 1317). "Nonetheless, the prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of the prosecution, making the claim scope narrower than it otherwise would be." *Phillips*, 415 F.3d at 1317 (citing *Vitronics Corp.*, 90 F.3d at 1582-83). Like the specification, the prosecution history should be used to understand the claim language and should not be used to "'enlarge, diminish, or vary' the limitations in the claims." *Markman*, 52 F.3d at 980 (quoting *Goodyear Dental Vulcanite Co. v. Davis*, 102 U.S. 222, 227 (1880)).

Not all sections of the prosecution history are afforded equal weight. For example, the prosecution history "cannot be used to limit the scope of a claim unless the applicant took the position before the PTO that would lead a competitor to believe that the applicant had disavowed coverage of the relevant subject matter." *Schwing GMBH v. Putzmeister Aktiengesellschaft*, 305 F.3d 1318, 1324 (Fed. Cir. 2002); *see Sitrick v. Dreamworks, LLC*, No. 03-4265-svw, 2006 WL 6116641, at * 17 (C.D. Cal. July 20, 2006) ("The prosecution history submitted by the Defendants does not include statements made by the patentee to explain the patent (the typical and most valuable use of prosecution history); rather, what is submitted are comments/objections made by the patent examiner to the patentee, requesting revisions. Because the prosecution history does not include remarks by the patentee, it is of limited usefulness."). In addition, the language of other patents that are made part of the intrinsic evidence through the prosecution history and are entitled to some

weight. *Acumed LLC v. Stryker Corp.*, 483 F.3d 800, 809 (Fed. Cir. 2007). However, the language in the specification and claims of the patent at issue should be afforded "significantly greater weight" because it is the patentee's own words. *Id.*

When the claims remain ambiguous even after an examination of the intrinsic evidence, a court may rely on extrinsic evidence to interpret the claim. *Phillips*, 415 F.3d at 1317 (citing *Markman*, 52 F.3d at 980. "The court may, in its discretion, receive extrinsic evidence in order 'to aid the court in coming to a correction conclusion' as to the 'true meaning of the language employed' in the patent. *Markman*, 52 F.3d at 980 (quoting *Seymour v. Osborne*, 72 U.S. (11 Wall.) 516, 546 (1871)). Like both the specification and the prosecution history, extrinsic evidence "is to be used for the court's understanding of the patent, not for the purpose of varying or contradicting the terms of the claims." *Id.* at 981 (citing *United States Indus. Chems, Inc. v. Carbide & Carbon Chems Corp.*, 315 U.S. 668, 678 (1942)); *see Vitronics Corp.*, 90 F.3d at 1584 ("[I]t may not be used to vary or contradict the claim language. Nor may it contradict the import of other parts of the specification. Indeed, where the patent documents are unambiguous, expert testimony regarding the meaning of a claim is entitled to no weight." (internal citation omitted)).

ANALYSIS

A. Disputed Phrase: <u>"an opening adjacent one end to the exterior of the bag through which contents are discharged"</u>

The disputed language is located in Claims 2 and 10 of the patent and describes the collapsible outer bag. The parties disagree about whether the claim language requires the discharge opening to be placed on the *bottom* of the bag or one *end* of the bag. Plaintiff proposes this claim should be interpreted as "an opening to the exterior of the bag through which contents are

dischargeable that is near one end of the bag." Defendant proposes this claim should be interpreted as "a discharge opening extending through the bottom of the bag." Plaintiff argues the patent language does not include a directional requirement for the openings. Defendant disagrees. Whether the patent requires the discharge spout be located at the bottom of the bag, a directional requirement, is the central dispute between the two parties. Resolution of this question, whether the patent includes a directional requirement, implicates a number of the disputed claims. Accordingly, the parties's arguments are described in detail.

Plaintiff insists the plain meaning of the phrase places no directional or positioning requirements on the discharge opening. Plaintiff asserts the specification expressly provides that the discharge opening can be at one or both ends.[3] Plaintiff also points out that the specification identifies an embodiment with a single opening where the contents of the bag are inserted and discharged through the same opening.[4] Plaintiff argues the fact that the specification uses the word "bottom" does not require that to be a limitation on the Claim. Plaintiff argues the prosecution history is devoid of any discussion of whether the discharge opening is on the top or the bottom of

_____

[3]The language to which Plaintiff refers is located in the "background" portion of the patent. In the relevant passage, the patentee describes a common problem that bags with liners suffer. The passage cited by Plaintiff is not describing the patented bag. The patent states: "When a liner is used in connection with such large bags to contain particulate or granular material and the bag is formed with an opening or spout at one or both ends for distributing the contents, a common problem is the tendency for the material when discharged to draw the liner out of the bag." (Patent No. '472 Col. 1, lines 43-46.)

[4]The language to which Plaintiff refers is located in the "detailed description" portion of the patent. Although Plaintiff cites column 3, the relevant passage is located in column 2. In this passage, the patentee describes the patent and refers to the accompanying diagrams. The patent states: "However, if desired, the bag can have only one spout with the other end being fully closed. For some applications, the bag may have no spout, but rather one end which is normally open, a side wall and a bottom which is fully closed and connected to the side wall. (Patent '472 Col. 2, lines 37-42.)

10

the bag. In its reply brief, Plaintiff finds significance in the fact that the claim language specifically uses the terms "end" and "other end."

Defendant offers several reasons why the discharge opening must be at the bottom of the bag. Defendant argues the prior art, the patent examiner, and the specification all describe the discharge opening as being on the bottom of the bag and the fill opening as being on the top of the bag. First, Defendant argues the bag employs a gravitational discharge, which necessitates the opening be located at the bottom of the bag. Defendant points out the detailed description of the bag in the specification provides that the bag is filled at the top and the contents discharged though the bottom.[5] Defendant argues Figure 2 in the patent is identified as the bottom view of the bag and liner.[6] Defendant argues, in an amendment to the patent application submitted by the patentee to the patent office, the patentee discussed the prior art of a different patent as having directional spouts.[7]

---

[5]The language to which Defendant refers is located in the "detailed description" portion of the patent, immediately prior to the single spout embodiment passage referred to by Plaintiff. In this passage, the patentee is describing portions of Figure 1. The patent states: "Preferably, the bag has a first spout [] in the top for filling the bag and a second spout [] in the bottom for discharging the contents of the bag." (Patent No. '472 Col. 2, lines 35-37.)

[6]The language to which Defendant refers is located in the "detailed description" portion of the patent. The patentee is describing Figure 2. The patent states: "Preferably, as shown in FIG. 2, the bottom of the liner is connected to the bag in at least two, and preferably four, spaced apart locations [] each adjacent the bottom and the side of the bag. (Patent No. '472 Col. 3, lines 4-7.)

[7]Defendant attaches the amendment to its brief at Exhibit D. On pages 7 and 8 of the exhibit, the patentee is discussing the rejection of Claims 1-3 and 13-18 as unpatentable over other patents. The patentee explains those claims define a specific arrangement of connections between the outer bag and the inner liner. In the prior art, the bag and liner are connected so that when emptied, the two collapse together, rather than independently. The patentee then describes the other patents, in order to demonstrate this distinction. In the material referenced by Defendant, the patentee describes the Isbrandtsen patent as "a generally cubical rigid container or box [] with a flexible bag [] received therein and the bag is secured to the container by a plurality of straps [] adjacent its stop [sic]. The bag has an inlet spout [], a vent [] in its top, and a discharge spout [] in its bottom." (Def. Ex. D at 7.) As is clear from the quoted material, the

Defendant reasons the contents of this sort of bag, which might weigh several thousand pounds, can only be discharged while the bag is upright and the contents pass through the bottom opening. Defendant insists the patent does not anticipate a danger that the liner would be withdrawn through the top opening because the contents of the bag and liner are always described as discharging through the bottom.

Defendant also asserts the reexamination history provides evidence that the discharge opening must be at the bottom of the bag. Defendant argues the patent examiner initially rejected what is now Claim 2 as being anticipated by prior art. Defendant argues the patent examiner described the invention as having directional spouts.[8]

Defendant argues Plaintiff's own expert supports the conclusion that the discharge opening

_____

patentee is describing a different invention. There is no indication the patentee intends the directional language to describe or limit the patent at issue.

[8]Defendant attaches the "*Ex Parte* Reexamination Communication Transmittal Form" from the Patent Office as Exhibit C to its brief. The patent examiner rejected Claims 1-4, 7-8, 10, 14-17, and 24-25 as being anticipated by the Cuthbertson patent. The patent examiner stated:

> However, even when the bag [] of Cuthberston includes a top wall/end [], it is asserted by the examiner that the liner inherently includes top and bottom openings in the vicinity of the filler spout [] and the discharge spout [], such that one of ordinary skill in the art, upon reading the Cutherbertson reference, would be in possession of the knowledge that such openings exist, even though the reference does not particularly point out such openings. The top and bottom liner openings are inherent in Cuthbertson because (1) the spouts [] (of the bag) are identified as being dispensing and filler spouts [], and (2) the liner is described as being filled with the bulk material [] and is shown as contacting the interior surface of the bag. If there were no openings in the liner, the spouts would be unable to function as indicated by their identification as <u>dispensing</u> and <u>filler</u> spouts since no material would be filled through the top spout [] or dispensed through the bottom spout []. Accordingly, the examiner asserts that the Cuthbertson reference inherently discloses top and bottom liner openings. Accordingly, the opening adjacent the bottom end of the liner would be an opening through which the material would be discharged.

(Def. Exhibit C at 5) (underlining in original).

is located at the bottom of the liner and the bag. Plaintiff's expert is also the inventor of another, similar bag, the Schnaars Patent No. 4,946,291. Defendant argues, in the Schnaars patent, the inventor describes the discharge spout for the invention as being on the bottom of the bag.[9]

Finally, Defendant argues the downward collapse of the liner during discharge requires the discharge opening be at the bottom of the bag and liner. Defendant relies on statements of the patent examiner.[10] Defendant insists that the patent examiner's understanding that the liner would collapse downward necessarily means that the discharge opening is at the bottom of the bag. Defendant concludes the patent specification, the prior art, and the patent examiner all describe the discharge opening to be at the bottom of the bag and liner. Defendant further concludes the patent does not include any embodiment of a bag and liner with a single opening because all the drawings include a top and a bottom opening.

The claim language does not include a requirement that the discharge spout be located on the bottom. In the specification, the patentee describes, as a preferred embodiment, a bag where the

---

[9]Defendant attaches the patent as Exhibit E to its brief. In the portion of the patent entitled "Detailed Description of the Preferred Embodiment," the inventor states "As seen in the FIGURES, since in fact the bulk bag [] would be the type of bulk bag that would release its contents from a discharge outlet [] as seen in FIG. 2, again liner [] would have a lower neck portion [] which would extrude out from the bottom spout [] of bulk bag." (Patent No. '291 Col. 4, lines 16-21.) Obviously, the inventor is describing his invention, not the invention at issue.

[10]Defendant refers to the patent examiner's statements in the "*Ex Parte* Reexamination Communication Transmittal Form." In the portion cited by Defendant, the patent examiner concludes that the Cuthbertson patent anticipates an invention that prevents the liner of the bag from being withdrawn as it empties because of the placement of the connections between the bag and the liner. The examiner describes the Cuthbertson patent as follows: "In this embodiment, downward collapse somewhat of the liner [], as material is discharged from the liner, would not be hindered by a connection with the bag because all connections would be at the bottom of the bag and liner. Therefore, with respect to such an embodiment, the liner can also downwardly collapse in a manner independent of any collapse of the bag." (Def. Exhibit C at 7.)

discharge opening is located on the bottom. However, the specification does not employ language requiring the discharge opening to be located on the bottom of the bag. Indeed, the specification expressly states that a bag could have only one spout. Although the predominant description of the bag and liner places the discharge spout on the bottom, the explicit claim that the bag could have only one spout makes clear that a directional discharge is not an essential characterization of the invention. *See Anderson Corp.*, 474 F.3d at 1367. Some portions of the examiner's statements referenced by Defendant do not describe this patent, but other patents. More importantly, when the patent examiner is talking about the patent at issue, the statements are not evidence of a position taken by the applicant before the patent office. *See Schwing GMBH*, 305 F.3d at 1325; *see also Alwin Mfg. Co. v. Global Plastics*, 629 F.Supp.2d 869, 872 (E.D. Wis. 2009) ("The utterances of an examiner in such a context cannot limit the patent's own clear terms. Although a patentee's clear disavowal of material during the prosecution history can limit the terms of a claim, the public is not expected to paw through patent file wrappers to divine idiosyncratic word meaning used offhandedly by patent examiners."). This court is mindful to avoid importing limitations from the specification and prosecution history unless the patentee specifically intended those limitations to be part of the invention. The intrinsic evidence cited by Defendant does not indicate that the patentee intended those words to become restrictions or limitations on the patented invention. The best argument in favor of adopting Defendant's interpretation is that the obviousness of a gravitational discharge is so plain that no individual skilled in the art could read the patent and anticipate any other option. That argument is undermined by the express language in the patent allowing for a bag and liner with a single spout. With only one spout, the top and bottom of the bag become relative to whether the bag is being filled or emptied.

The intrinsic evidence provides sufficient clarification of the claim language and eliminates the need to resort to examining extrinsic evidence. Plaintiff's construction of the claim is persuasive and supported by the intrinsic evidence. The claim at issue is interpreted to mean "an opening to the exterior of the bag through which contents are dischargeable that is near one end of the bag."

B. Disputed phrase: "an opening adjacent to one end through which the contents are discharged"

The disputed language is located in Claims 2 and 10 of the patent and describes the liner of the bag. Plaintiff proposes this claim should be interpreted as "an opening near one end of the liner through which the contents are dischargeable." Defendant proposes this claim should be interpreted as "a discharge opening extending through the bottom of the liner." This disagreement hinges on whether the patent contains a directional requirement for the discharge opening. The arguments advanced in support of the competing interpretations of this phrase are the same as the arguments advanced in support of the first disputed phrase. The conclusion is the same. The patent does not contain a directional requirement. Accordingly, Plaintiff's construction of the claim is persuasive and supported by the intrinsic evidence. The claim at issue is interpreted to mean "an opening adjacent to one end through which the contents are discharged."

C. Disputed phrase: "said connectors being unitary"

The disputed phrase is located in Claim 2 of the patent. This claim involves the connectors that permanently connect the liner to the bag. Figures 6 and 7 of the patent illustrate the concept at issue in this claim. Plaintiff proposes this claim should be interpreted as "an undivided component that extends between the bag and the liner and is connected to the bag and the liner." Defendant proposes this claim should be interpreted as "each connector being of a one piece construction." The

dispute is whether the connectors must be constructed from a single piece of material. Plaintiff

relies on both intrinsic and extrinsic evidence for the conclusion that the connector must simply be

undivided, rather than constructed from a single piece of material. Plaintiff argues the dictionary

defines "unitary" as "not divided." Plaintiff argues, in the patent, Claim 13 is dependent on Claim

2. In Claim 13, the connectors are described as comprising "two strips of overlapped plastic film

heat sealed together." (Patent No. '472 Col. 5, lines. 60-62.) When formed, the connectors are thus

undivided components, even though they are not a one-piece construction. Plaintiff argues the

specification contains two embodiments of the connectors, neither of which support Defendant's

language. The patent describes the connectors in Figures 6 and 7 as follows:

> Preferably, each tab [] is a loop of fiber reinforced adhesive tape with overlapped
> runs adhered together and end portions [] adhered to an end portion of the liner. If
> a large number of liners [] are made, it may be economically desirable to make the
> tabs [] of two pieces of plastic film heat sealed together and integral with panel
> portions forming an end of the liner in a manner similar to that of making the tab [].

(Patent No. '472 Col. 3, lines 58-65.) Finally, Plaintiff relies on the prosecution history to support

its interpretation of the word "unitary." The patent examiner ultimately found Claim 2 patentable

after it was amended. (Pl. Ex. D at 8.) The patent examiner distinguished the Cuthbertson patent,

which used straps as connectors. (*Id.*) The examiner concluded the Cuthbertson connectors, as well

as the connectors in all other references to prior art, were not "unitary" and therefore this patent's

connectors were not covered by prior art. (*Id.* at 8-9.)

Defendant argues the word "unitary" is most commonly used to reference a single piece

construction. Defendant argues the embodiments of Figures 6 and 7, which demonstrate unitary

construction through a single piece of tape folded on itself, distinguishes this construction from the

embodiments in Figures 1 through 5.[11]

The plain language of Claim 2 is somewhat ambiguous and, standing alone, does not resolve the dispute as described by the parties. Claim 13 expressly describes a connector as two strips of plastic that are heat sealed. On the other hand, Claim 10 describes a connector as a loop of fiber reinforced tape. Whether the connector is constructed of a single piece of material or whether it is multiple pieces of material fused together to form something unitary is not clarified by the language in Claim 2 or by the language in the other claims. The description of Figures 6 and 7 provides two embodiments for the connector. One embodiment is a loop of tape. The other embodiment is two pieces of plastic heat sealed together. Accepting Defendant's interpretation of the disputed phrase necessarily excludes one of the two embodiments of the connector contained in the specification. The patent examiner's comments in the prosecution history supports Plaintiff's interpretation of the disputed phrase. The patent examiner distinguishes a strap system, which was not unitary, from either of the two embodiments contained in this patent, which are unitary. As aptly stated by Plaintiff in its reply, "unitary" refers to the resulting product, not the components used during the construction process. Plaintiff's construction of the claim is persuasive and supported by the evidence. The claim at issue is interpreted to mean "an undivided component that extends between the bag and the liner and is connected to the bag and the liner."

    D. Disputed phrase: "said connectors being spaced apart and each located adjacent a side wall portion of said bag and adjacent the one end of said bag and liner having the discharge

---

[11]The specification language describing Figures 6 and 7 is quoted above and includes two embodiments. By comparing Figures 1 through 5 to Figures 6 and 7, no person skilled in the art of the field could determine how the connectors constructed, only what the connectors should look like upon construction.

openings therethrough"

The disputed phrase is located in Claims 2 and 10.  The dispute centers on whether the patent has a directional component such that the connectors located at the end of the bag and liner with the discharge opening must be located at the bottom of the bag.  Plaintiff proposes this claim should be interpreted as "the connectors are located so that they do not touch one another and so that they are near both the end of the bag through which the contents of the bag are emptied and the sides of the bag."  Defendant proposes this claim should be interpreted as "the connectors being spaced far apart from each other and being located adjacent the side wall portion of the bag and the connectors being adjacent the bottom end of the bag having the discharge opening therethrough and adjacent the bottom end of the liner having the discharge opening therethrough."

The arguments advanced in support of the competing interpretations of this phrase are, in large part, the same as the arguments advanced in support of the first disputed phrase.  The conclusion is the same.  The patent does not contain a directional requirement.  Accordingly, Plaintiff's construction of the claim is persuasive and supported by the intrinsic evidence.  The claim at issue is interpreted to mean "the connectors are located so that they do not touch one another and so that they are near both the end of the bag through which the contents of the bag are emptied and the sides of the bag."

E.  Disputed phrase:  "all of said connectors being constructed, arranged, located and connected to said liner such that said liner is not withdrawn from said bag and can collapse upon itself during discharge of the contents thereof independently of and without being substantially restricted by said bag from collapsing"

The disputed phrase is located in Claims 2 and 10.  The parties disagree on the manner in

which the bag must collapse. The parties also disagree how the word "substantially" must be afforded meaning. Plaintiff proposes this claim should be interpreted as "the build of the connectors, their attachment to the liner and the places at which they are attached to the liner allow the liner to remain attached to the bag while the contents of the bag are emptied and also allow the liner to cave in as the contents of the bag are emptied without being strongly held back by the bag, even as the bag itself does not cave in." Defendant proposes this claim should be interpreted as "all of the connectors are constructed, arranged, located and connected to the liner so that the liner is not withdrawn from the bag, and all of the connectors being constructed, arranged, located and connected to the liner such that the liner vertically collapses upon itself during the discharging of the contents independently of the bag, and the liner vertically collapses without the bag restricting the vertical collapsing movement of the liner." Defendant argues the patent language supports the interpretation that the liner must collapse vertically. Plaintiff argues the bag must simply collapse and that the patent language does not support any requirement that the collapse must occur vertically. Plaintiff argues Defendant's construction fails to give meaning to the word "substantially."

Plaintiff argues the phrase refers to both a structure and a function. Plaintiff argues a collapsible bag collapses from all directions, not just vertically. Plaintiff argues limiting a collapse to a vertical flattening is inconsistent with the plain meaning of the word "collapse" and is unsupported by the specification and the prosecution history. Furthermore, the phrase "substantially restricting" does not mean "preventing." Plaintiff argues no evidence supports an interpretation of the phrase to mean "preventing."

Defendant argues the patent supports its interpretation of the disputed phrase. The patent

describes the container as "collapsible" and capable of being shipped in a collapsed or flat condition. (Patent No. '472 Col. 1, lines. 5-6, 15-18.) The description further states the bag and liner, when empty, can be folded or collapsed into a preferably flat form. (Patent No. '472 Col. 1, lines 23-25, 29-32.) Defendant reasons the description of the liner collapsing on itself while inside the bag thus describes a liner that has vertical movement, much like a building that is collapsing. This interpretation is further reinforced by the description that the liner should not be connected to the bag at all four corners on both ends. If the liner were connected to the bag at all four corners at both ends, the liner could not fall on itself as the contents were discharged. In order to fall on itself, Defendant argues the collapse must occur vertically.

Defendant argues the Schnaar patent uses the words "inflation" and "expand" to describe what happens to the liner when air is forced into the collapsed liner. (Def. Ex. E - Patent No. '291 Col. 4, lines 45-67.) As opposed to an expanded or inflated bag, a collapsed bag is vertically flat, not just caved in on itself. Defendant points out the arrows in the Schnaars patent in Figure 3 show the bag inflates vertically.

Finally, Defendant argues other inventions by the same individuals who invented this bag and liner use the word "collapse" in a similar manner. The inventors of the patent at issue here also patented a collapsible liner for a cage. (Def. Ex. G.) In that patent, the liner collapses on itself in a vertical manner to lie flat at the bottom of the cage when the contents are discharged. The patent describes the liner as collapses from an upstanding position to a knocked down position. (Def. Ex. G - Patent No. '824 Col. 1, lines 40-49.) The cage walls can then be folded over the collapsed liner. (Patent No. '824 Col. 1, lines 50-51.)

In its reply brief, Plaintiff argues the portion of the patent describing how the bag can be

folded does not support Defendant's claim construction. The configuration of the empty bag does not describe the manner in which the bag emptied. A bag that collapses on a horizontal axis could also be folded flat.

The word "collapse" does not limit the external and internal forces upon on object to a vertical flattening. It may well be that gravity is the primary force upon the liner as it empties and, as a result, the liner flattens downward. The plain language in Claims 2 and 10, however, does not limit the collapse to a vertical flattening. Furthermore, the language in the Claims and the specification does not indicate a requirement that the collapse occurs in a vertical manner. Defendant, notably, does not identify where the word "vertical" appears in either the Claims or the specification. Defendant's proposed construction, by limiting the collapse to a reduction in the height of the vertical axis, would necessarily require the liner to maintain its width and depth. Nothing in either the claims or the specification supports such construction. The language used in other patents does not establish that this patent was intended to deflate or collapse in a vertical manner exclusively. Accordingly, Plaintiff's construction of the claim is persuasive and supported by the intrinsic evidence. The claim at issue is interpreted to mean "the build of the connectors, their attachment to the liner and the places at which they are attached to the liner allow the liner to remain attached to the bag while the contents of the bag are emptied and also allow the liner to cave in as the contents of the bag are emptied without being strongly held back by the bag, even as the bag itself does not cave in."

F. Disputed phrase: "whereby the contents of said bag and liner are discharged through said openings without the liner being withdrawn from said bag by such discharge"

The disputed phrase is located in Claims 2 and 10. The parties disagree whether the phrase

requires the liner to remain attached to the bag while the contents are discharging or whether the liner must remain inside the bag while the contents are discharging. Plaintiff proposes this claim should be interpreted as "the liner remains attached to the bag during the emptying of its contents." Defendant proposes this claim should be interpreted as "whereby the contents of the bag and liner are discharged through the discharge openings without the liner passing into the bag discharge opening by the discharge of the contents."

Plaintiff argues one of the purposes of the invention was to solve the problem of the liner tearing away from the bag when the contents were emptied and drawing the liner out with the contents. (Patent '472 Col. 1, lines. 45-49.) Plaintiff argues the liner may pass into the discharge opening, consistent with the patented invention. Plaintiff points to Figure 3 in the patent which shows a portion of the liner, the liner's spout, protruding beyond the bag spout. Finally, Plaintiff argues the prosecution history is consistent with its construction of the disputed language. Plaintiff explains, the patent was distinguished from prior inventions where the liner was attached to the bag so that when the contents were emptied, the vacuum forces inside the liner were sufficiently great to cause the liner to rip from where it was attached to the bag. (Pl. Ex. C at 44-45.) The use of the connectors at the locations specified in the invention solved the problem of the liner ripping and being drawn out of the bag. (*Id.* at 45.)

Defendant argues the invention solved the problem of the liner being drawn out of the bag as the contents of the bag are discharged. Defendant argues that Plaintiff's construction of the contested phrase is nonsensical. The connectors are presumed to remain in place during a discharge. Defendant argues Plaintiff's construction renders the phrase "without being withdrawn" redundant.

In prior inventions, the liner was attached to the bag in such a manner that vacuum forces

would tear the connections and the liner would be pulled out of the bag along with the contents. The problem with the prior inventions was the connections between the liner and bag. The effect or impact of that problem was that the liner would tear and would be withdrawn from the bag during discharge. The connectors in Plaintiff's invention are the solution to that problem. The connectors are designed to prevent this tearing and thus prevent the liner, or parts of the liner, from being pulled out of the bag along with the contents. This disputed phrase claims to avoid the *effect* of the liner tearing away from the bag during the discharge. Plaintiff's proposed construction, however, omits any reference to the effect. Defendant's proposed construction is also problematic. Figure 3 shows a bag with a portion of the liner, the spout, extruding through the bag's opening. Defendant's proposed construction uses the word "into" rather than "through." The illustration clearly shows that the liner, or at least a portion of the liner, may go "into" the bag discharge opening. This does not mean that the entire liner enters the bag discharge opening. Claim 18, which is discussed later, also specifies that the liner discharge spout is extendable into the bag discharge spout.

The disputed phrase does not need construction. The meaning of the entire phrase is obvious. The phrase "the contents of said bag and liner are discharged through said openings" is not contested by either party. This phrase means exactly what it says, the stuff inside the bag and liner exits the bag and liner through the openings in the bag and liner. The controversial portion of phrase is "without the liner being withdrawn from said bag by said discharge." The meaning of this phrase is also obvious. The phrase means when the stuff in the bag and liner exits through the openings, the liner remains in place. Persons of ordinary skill of this art would understand what this phrase means without further construction.

G. Disputed phrase: "substantially restricted"

The disputed phrase is located in Claims 2 and 10. In its opening brief, Plaintiff argues the phrase "substantially restricted" was readily apparent and did not need construction. Defendant argues the phrase must be given meaning or it would render the patent indefinite. Defendant argues the patent elsewhere uses the word "insure" when describing how the liner collapses independently from the bag. Defendant proposes the phrase should be construed to mean "without being prevented." In its reply brief, Plaintiff argues similar phrases have been used in other cases without rendering the patent indefinite or invalid, citing *Playtex Prods.*, 400 F.3d at 907. Plaintiff argues construing the word insure to mean "without being prevented" would require the liner to collapse independently from the bag each and every time.

The phrase "substantially restricted" is used to describe the relationship between the bag and the liner, while the liner is collapsing. The patent states that the liner should be able to collapse "without being substantially restricted" by the bag. The Federal Circuit has held that words such as "generally" and "substantially" are frequently used in patents as "words of approximation" to "avoid a strict numerical boundary to the specified parameter." *Playtex Prods.*, 400 F.3d at 907 (quoting *Anchor Wall Sys. v. Rockwood Retaining Walls, Inc.*, 340 F.3d 1298, 1311 (Fed. Cir. 2003)). Although the word "substantially" may require construction for the purpose of some patents, in other situations the word may be afforded its plain and ordinary meaning. *Medtronic AVE, Inc. v. Cordis Corp.*, 516 F.Supp.2d 741, 750 (E.D. Tex. 2007). The phrase "substantially restricted" is not defined or quantified in the patent. Within the context of these Claims, the word "substantially" is used as a word of approximation. The liner should be able to collapse without interference from the bag, while recognizing that the liner's collapse may be impeded, in a some negligible manner, by the bag. The meaning of the word "restricted" is also readily apparent. As

the liner collapses, the bag does not interfere with the collapse. Accordingly, the phrase "substantially restricted," in this context, means the liner must be able to collapse without meaningful interference from the bag.

H. Disputed word: "stitches"

The disputed term is located in Claim 12. The parties disagreement turns on the specificity required of the term "stitches." Plaintiff proposes this claim should be interpreted as "material that repeatedly pierces through at least two things and, in doing so, ties the two things together." Defendant proposes this claim should be interpreted as "a length of thread that repeatedly pierces through the loop of tape and the bag to tie them together."

Plaintiff argues the patent claim language justifies a broad definition. Plaintiff argues the patent never identifies or specifies the material used for stitching. Plaintiff argues the word is "material-independent," as opposed to other places in the patent where the material is identified, such as "fiber reinforced filament tape." Defendant states the patent identifies stitches in Figure 3 as reference number 56 and in Figure 6 as reference number 98. Defendant argues Figure 3 specifically shows the stitches as a length of thread. Defendant argues the patent examiner, in rejecting Claim 8, states that the sewing would include fiber. (Def. Ex. C. at 10.)

Both parties agree the stitches must pierce through materials to tie the materials together. The point of contention is what material must be used to make the stitches. The patent does not identify the material that must be used to make the stitches. No limitation on the material used for the stitches should be imported from the prosecution history. The patent examiner did not reject Claim 8 because of the material used to make the stitches. Accordingly, Plaintiff's construction of the claim is persuasive and supported by the intrinsic evidence. The claim at issue is interpreted to

mean "material that repeatedly pierces through at least two things and, in doing so, ties the two things together."

I. Disputed phrase: <u>"located adjacent the other end of said bag and liner and connecting said liner to said bag"</u>

The disputed phrase is located in Claim 14. The dispute concerns whether the claim language should be constructed to place a directional limitation on the placement of the connectors. Plaintiff argues the claim language simply directs these connectors be placed at the end opposite from the end where the bag contents are discharged. Plaintiff proposes this claim should be interpreted as "connectors joining the liner to the bag are near the opposite side of the bag from which the contents are emptied." Defendant argues, because the contents are discharged from the bottom of the bag, these connectors are placed at or near the top of the bag. Defendant proposes the claim should be interpreted as "located next to the top end of the bag and the top end of the liner and connecting the liner to the bag."

The arguments advanced in support of the competing interpretations of this phrase are the same as the arguments advanced in support of the first disputed phrase. The conclusion is the same. The patent does not contain a directional requirement. Accordingly, Plaintiff's construction of the claim is persuasive and supported by the intrinsic evidence. The claim at issue is interpreted to mean "connectors joining the liner to the bag are near the opposite side of the bag from which the contents are emptied."

J. Disputed phrase: <u>"at least two connectors located adjacent other end of said bag and liner"</u>

The disputed phrase is located in Claim 16. The dispute centers on whether the patent includes a directional requirement. Plaintiff proposes this claim should be interpreted as "two or

more connectors are near the opposite side of the bag from which the contents are emptied." Defendant proposes this claim should be interpreted as "two or more connectors located adjacent the top end of the bag and the top end of the liner."

The arguments advanced in support of the competing interpretations of this phrase are the same as the arguments advanced in support of the first disputed phrase. The conclusion is the same. The patent does not contain a directional requirement. Accordingly, Plaintiff's construction of the claim is persuasive and supported by the intrinsic evidence. The claim at issue is interpreted to mean "two or more connectors are near the opposite side of the bag from which the contents are emptied."

K.  Disputed phrase:  <u>"at least four of said connectors are located adjacent said one end of said bag and liner"</u>

The disputed phrase is located in Claims 15 and 17. The dispute centers on whether the patent includes a directional requirement. Plaintiff proposes this claim should be interpreted as "four or more connectors are near the end of the bag through which the contents of the bag are emptied." Defendant proposes this claim should be interpreted as "four or more connectors are located adjacent the bottom end of the bag and the bottom end of the liner."

The arguments advanced in support of the competing interpretations of this phrase are the same as the arguments advanced in support of the first disputed phrase. The conclusion is the same. The patent does not contain a directional requirement. Accordingly, Plaintiff's construction of the claim is persuasive and supported by the intrinsic evidence. The claim at issue is interpreted to mean "four or more connectors are near the end of the bag through which the contents of the bag are emptied."

L.  Claims Involving Disputes About Whether Construction Is Required.

The parties dispute whether three phrases located in Claim 18 require any construction. Plaintiff argues the three phrases do not require any construction.  Plaintiff contends any construction by the court would be an exercise in redundancy.  Plaintiff insists the meaning of the three phrases is readily apparent.  Defendant argues the phrases should be constructed so their meanings are easier to comprehend.

Claim construction is required where the meaning or scope of technical words or terms of art are unclear.  *United States Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (1997).  Claim construction is "not an obligatory exercise in redundancy."  *Id.*  In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of widely accepted meaning of commonly understood words."  *Phillips*, 415 F.3d at 1314.  Accordingly, a court need not "repeat or restate every claim term in order to comply with the ruling that claim construction is for the court."  *United States Surgical Corp.*, 103 F.3d at 1568.

a.  Disputed phrase:  <u>"a discharge spout of said bag at least in part defining said discharge opening of said bag"</u>

Defendant proposes this claim should be interpreted as "a discharge spout of the bag at least in part forming the discharge opening of the bag."  Defendant's proposal replaces the word "said" with the word "the" and the word "defining" with the word "forming."  Defendant argues the word "forming" is used throughout the patent when referring to the components of the bag and liner.  For example, in the detailed description describing Figure 5, the patent states "the tab has two pieces of overlapped plastic liner material, . . ., each of which is preferably a homogenously integral portion

to adjacent panels [] and [] forming part of an end of the liner." (Patent No. '472 Col. 3, lines 37-41.)

Persons of ordinary skill in the field would understand what the disputed phrase means, without further construction. None of the words in the disputed phrase are terms of art requiring technical definitions. The terms in the disputed phrase should be afforded their plain and ordinary meaning. The discharge spout defines, in part, the discharge opening. Defendant's construction is not supported by the specification. The word "forming" does not appear "throughout" the specification. Defendant's specific reference to the word "forming" in the specification does not involve a discussion of the spout, but of the tabs on the liner. The meaning of the disputed phrase is readily apparent and no further construction is necessary.

b. Disputed phrase: <u>"a discharge spout of said liner defining at least in part said discharge opening of said liner"</u>

Defendant proposes this claim should be interpreted as "a discharge spout of the liner at least in part forming the discharge opening of the liner."

The arguments advanced by the parties are identical to the arguments advanced for the previous disputed phrase. Persons of ordinary skill in the field would understand what the claim means. The meaning of the disputed phrase is readily apparent and no further construction is necessary.

c. Disputed phrase: <u>"extendable into said discharge spout of said bag"</u>

Defendant proposes this claim should be interpreted as "able to be extended into the discharge spout of the bag." Defendant reasons the phrase "able to be extended" is more readily understood than the term "extendable."

Persons of ordinary skill in the field would understand what the claim means. The meaning of the disputed phrase is readily apparent and no further construction is necessary.

M.  Post-Hearing Issues

The parties both submitted briefs after the hearing.  Defendant's post-hearing brief primarily addressed the one-spout embodiment of the bag included in the specification.  Defendant argues the single sentence referring to a single spout bag does not constitute the disclosure required under 35 U.S.C. § 112.[12]  Additionally, the patent contains no drawings of a single spout bag, as required by 35 U.S.C. § 113 and 37 C.F.R. § 1.81 and 1.84.  Defendant argues the inadequacy of a written description renders a patent invalid, citing *Ariad Pharm., Inc. v. Eli Lilly and Co.*, 598 F.3d 1336, 1344-46 (Fed. Cir. 2010) (en banc).  Defendant argues, because the single spout embodiment is not fully described or illustrated in the specification it cannot be considered for the purposes of claim construction.

Plaintiff offers three responses.  First, Plaintiff reiterates that the patent does not include a directional limitation.  Plaintiff insists nothing in the specification, the claims or the statements made by the patentee to the Patent Office support limiting the patent in such a manner.  Second, Plaintiff argues the single spout embodiment would be understood by a person skilled in the art.  Plaintiff explains that the portion of the specification at issue where the single spout or no spout bag is

---

[12]Defendant also comments that the sentence after the one-spout embodiment is described states "[f]or some applications, the bag may have no spout."  The sentence continues after the portion cited by Defendant.  The entire sentence reads as follows: "For some applications, the bag may have no spout, but rather one end which is normally open, a side wall and a bottom which is fully closed and connected to the side wall.  The normally open end is closed by simply gathering together and tying off a portion of the side wall adjacent such end."  (Patent No. '472 Col. 2, lines 39-44.)  Defendant contends that a no-spout bag cannot be covered by the patent because the patent claims specifically call for a discharge opening.

mentioned specifically references and incorporates Patent No. 4,596,040 (Patent No. '040). The incorporated patent, Patent No. '040, describes, in detail and with illustrations, a single spout bag, a bag with no spout, and a liner with a single spout. (Exhibit B to Plaintiff's Post-Hrg Brief.) Third, Plaintiff argues a patent's validity is not at issue during claim construction.

During the claim construction phase of a patent infringement case, the court is concerned with the meaning of the terms in the patent, not the patent's validity. *See Lydall Therma/Acoustical, Inc. v. Fed. Mogul Corp.*, 566 F.Supp.2d 602, 606 (E.D. Mich. 2008) ("[C]laim construction in a *Markman* proceeding is always tentative and its conclusions are open to change as the case unfolds in the validity and infringement phases."); *Old Reliable Wholesale, Inc. v. Cornell Corp.*, No. 5:06-cv-2389, 2007 WL 5704044, at * 2 n. 1 (N.D. Ohio Dec. 14, 2007) ("However, at the *Markman* phase of the litigation, construing the claims, not determining validity or invalidity, is the primary task. Therefore, validity of the patent is an issue for another day."). "Claim construction should not, of course, be blind to validity issues: 'claims should not be construed, if possible, as to sustain their validity.'" *MBO Labs., Inc. v. Becton, Dickinson & Co.*, 474 F.3d 1323, 1332 (Fed. Cir. 2007) (quoting *Rhine v. Casio, Inc.,* 183 F.3d 1342,1345 (Fed. Cir. 1999)). "However, validity construction should be used as a last resort, not a first principle: 'we have limited the maxim [that claims are to be construed to preserve validity] to cases in which the court concludes, after applying all the available tools of claim construction, that the claim is still ambiguous.'" *Id.* (quoting *Phillips v. AWH Corp.*, 415 F.3d 1303, 1327 (Fed. Cir. 2005) (en banc)). When "other claim construction tools unambiguously resolve the claim construction dispute, considering validity would be improper." *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1304 (Fed. Cir. 2005) (citing *Phillips*, 415 F.3d at 1327).

The intrinsic evidence, including the single spout embodiment in the specification, do not impose a directional requirement on the bag and liner. Defendant's assertion that the court should not consider the single spout embodiment is not supported by any legal authority. None of the opinions cited by Defendant indicate a court may not consider a portion of the specification. On the other hand, the Federal Circuit has specifically held that validity issues are relevant during claim construction *only* if the claim is ambiguous after considering all the evidence. *See Phillips*, 415 F.3d at 1327. The reasoning supporting Defendant's assertion is that the embodiment is not written in sufficient detail and is not supported by any illustration. Patent No. '472's specific incorporation of Patent No. '040 calls this reasoning into question. Whether the single spout embodiment renders the patent invalid is not an issue to be decided here.

CONCLUSION

The main dispute between the parties concerns whether the patent requires the discharge occur from the bottom of the bag. Although some descriptions in the patent suggest the bag has a top and a bottom, the language used does not indicate that the inventor intended the bag and liner to have a directional requirement. The language in the patent and the prosecution history relied upon by Defendant are best understood as words of convenience and universal reference, rather than technical requirements and limitations. When describing a discharge from these sorts of storage bags, one would generally state that the product exits the "bottom" of the bag. Persons of ordinary skill in the field would not read that description of the "bottom" of the bag as a requirement or a technical limitation on the invention.

Date:   June 3, 2010                                    /s/ Paul L. Maloney
                                                      Paul L. Maloney
                                                      Chief United States District Judge